UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Nos. 4:97-cr-00141-ERW & |
| Plaintiff, | ) | 4:03-cv-00923-ERW |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| NORRIS G. HOLDER, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF CHANGED ECONOMIC CIRCUMSTANCES AND MOTION
TO STAY ORDER OF RESTITUTION**

Defendant Norris G. Holder, Jr., through his undersigned counsel, hereby notifies this Court of his changed economic circumstances, pursuant to 18 U.S.C. § 3664(k), and requests that this Court enter an order, pursuant to 18 U.S.C. § 3572(d), staying execution of the restitution order against him until such time as he is able to obtain employment. In support of this request, Mr. Holder states:

1.      This is a death penalty case. Mr. Holder and his co-defendant, Billie Jerome Allen, were jointly charged with committing a bank robbery in which a death resulted, under 18 U.S.C. § 2113, and with using or carrying a firearm in connection with a crime of violence, under 18 U.S.C. § 924(c). They were tried separately in early 1998, and each was convicted on both counts. Mr. Allen was sentenced to life imprisonment on the bank robbery charge and to death on the 924(c) charge; Mr. Holder was sentenced to death on both counts.

2.      Mr. Holder has taken responsibility for his involvement in the bank robbery, and he testified to his role at trial. However, the evidence presented at both defendants' trials established that Billie Allen, alone, shot and killed bank security guard Richard Heflin, the victim in this case. The government has long since conceded that Allen shot Mr. Heflin.

3.      This Court sentenced both Allen and Holder during the summer of 1998. The court imposed no restitution obligation against Billie Allen. (See docket nos. 430, 431). Against Mr. Holder, however, the court ordered that he pay restitution to several identified victims in the total amount of $97,810.52. (*See* docket nos. 458, 480, unnumbered entry following 480).

4.      The restitution order against Mr. Holder was predicated in substantial part on the existence of a financial settlement owed to him as a result of a childhood train accident that severed one of his legs. This Court ordered that 100% of those settlement funds be used to satisfy Mr. Holder's restitution obligations. (See docket nos. 543, 546, 547).

5.      From December 4, 1998 until the settlement was exhausted on February 23, 2005, every dollar Mr. Holder received in connection with this settlement was used to satisfy his restitution obligation. Docket entries, beginning with 556 and mostly unnumbered, confirm these payments totaling $54,000.00.

6.      As a death row prisoner, Mr. Holder has extremely limited access to employment opportunities. The only jobs available to prisoners in the Special

2

Confinement Unit at the United States Penitentiary in Terre Haute, Indiana, where Mr. Holder and most other federal death-sentenced prisoners are housed, are a small number of orderly positions that are rotated every six months. Thus, since the exhaustion of his settlement, he has had no meaningful or consistent earning capacity.

7.    In June 2009, the Bureau of Prisons began garnishing funds Mr. Holder received from his family or friends, and submitting those funds to the court in satisfaction of Mr. Holder's restitution obligation. (*See, e.g.,* unnumbered docket entries for June 9, 2009, February 11, 2013, March 11, 2013). Through these payments, Mr. Holder satisfied an additional $405.00 of his restitution obligation.

8.    Particularly because they have no access to employment, death row prisoners such as Mr. Holder are entirely dependent on the assistance of their family and friends to provide the funds required to cover anything beyond the most basic needs in prison. Prisoners must purchase such essential items as letter-writing materials and postage, telephone calls, e-mails, supplemental food, personal hygiene products, and even some items of clothing.

9.    Mr. Holder's family and friends live primarily in the St. Louis area. Due to the distance from Terre Haute and their limited resources, Mr. Holder's family and friends are only able to visit him on rare occasions. For this reason, they provide funds to Mr. Holder so that he may stay in regular contact with them through letters, phone calls, and e-mails.

10.     Mr. Holder takes his restitution obligation seriously, and recognizes that he has not yet fully satisfied that obligation. However, without the ability to maintain regular or consistent employment while on death row, he can satisfy his obligation only through the generosity of his family and friends, in a way that both imposes a significant hardship on Mr. Holder and burdens those who provide support to him, who are not party to his restitution obligation.

11.     Meanwhile, Mr. Holder's co-defendant, and the person who actually shot and killed Richard Heflin, is not obligated to pay any restitution, and has never done so.

12.     Further, it appears that Mr. Holder has fully discharged the restitution owed to the family of Richard Heflin and to two other individual recipients, and to the bank he robbed. Mr. Holder has repaid a total of $54,405.00. His restitution obligations those victims totaled $47,316.85.

13.     Specifically, this Court's Amended Judgment, entered on August 21, 1998, ordered Mr. Holder to pay restitution in the following amounts:

| | |
|---|---|
| Dana Heflin | $6,090.05 |
| Sue Heflin | $16,819.02 |
| Jason Heflin | $349.00 |
| Donald Ayers | $4,023.00 |
| Howard Schulze | $500.00 |
| Lindell Bank & Trust Co. | $24,068.78 |
| Lindell Bank & Trust Co. | $948.00 |

Cincinnati Insurance Co.        $5,000.00

Cuna Mutual Insurance Soc.      $40,012.67

This Court further provided that restitution payments should first be used to satisfy the amounts owed to Dana Heflin, Sue Heflin, Jason Heflin, Donald Ayers, Howard Schulze, and the Lindell Bank and Trust. Only after these victims are paid in full shall restitution be paid to the Cincinnati Insurance Company or to Cuna Mutual Insurance Company.

14.    Under 18 U.S.C. § 3572(d), this Court has the authority to stay an order imposing a financial obligation, including a restitution order, and to direct that the obligation be paid in installments based on the defendant's financial circumstances.

WHEREFORE, based on the exhaustion of his financial settlement and his lack of access to employment, Mr. Holder asks this Court to enter an order staying his restitution obligation until such time as he is permitted to work or otherwise regains the ability to earn income.

Respectfully Submitted,

JENNIFFER HORAN
FEDERAL DEFENDER


By:    /s/Scott W. Braden_____
       Scott W. Braden
       Assistant Federal Defender
       Arkansas Federal Defender Office
       Ark Bar Number 2007123
       1401 West Capitol, Suite 490

Little Rock, Arkansas 72201
(501) 324-6114

Counsel for Norris G. Holder, Jr.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this _ 18th___day of April, 2016, a copy of the foregoing Notice of Changed Economic Circumstances and Motion to Stay Order of Restitution was served via the CM/ECF electronic filing system upon: Cristian Smith, Assistant United States Attorney, cris.smith@usdoj.gov, Joseph Landolt, Assistant United States Attorney, joseph.landolt@usdoj.gov; and the Office of the United States Attorney for the Eastern District of Missouri, usamoe.crimdock@usdoj.gov.

/s/ Scott W. Braden
Scott W. Braden