UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORRIS G. HOLDER, JR., | ) Case No. _____ |
| | ) Criminal Case No. 4:97-cr-00141-ERW |
| Movant, | ) Prior Civil Case No. 4:03-cv-00923-ERW |
| | ) |
| v. | ) **CAPITAL CASE** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255**

Movant, Norris G. Holder, Jr., through his undersigned counsel, hereby files a motion to set aside the judgment against him on Count 2, in case number 97-cr-00141-ERW, pursuant to 28 U.S.C. § 2255. As explained below, Mr. Holder's conviction under 18 U.S.C. § 924(c) must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States,* 135 S. Ct. 2551 (2015) and *Welch v. United States,* 136 S. Ct. 1257 (2016).

**INTRODUCTION**

On March 26, 1998, Norris G. Holder, Jr., was convicted of one count of bank robbery in which a killing occurs, in violation of 18 U.S.C. § 2113(a) and (e) (Count 1), and one count of using or carrying a firearm during and in relation to a crime of violence, specifically, bank robbery as charged in Count 1, in violation of 18 U.S.C. § 924(c) (Count 2). Mr. Holder was sentenced to death on each count, based upon his co-defendant's killing of a security guard during the robbery. The death sentence was imposed pursuant to sentencing provisions specific to each

statute of conviction. The applicable sentencing provision with respect to the § 924(c) conviction was  18 U.S.C. § 924(j).

On June 26, 2015, the Supreme Court held in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. That clause, the Court held, cannot constitutionally define a "crime of violence" for purposes of the ACCA's sentence-enhancing provisions. *See Johnson,* 135 S. Ct. at 2557. On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review, including Mr. Holder's case. *Welch v. United States,* 136 S. Ct. at 1265.

The residual clause of § 924(c), the statute under which Mr. Holder was convicted, is materially indistinguishable from the clause *Johnson* invalidated. After *Johnson,* federal bank robbery under § 2113(a) and (e) categorically fails to qualify as a "crime of violence." Therefore, Mr. Holder's § 924(c) conviction and its attendant death sentence are invalid.

The relevant portion of § 924(c) includes two alternative clauses defining "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that, by its nature, involves a substantial

2

risk that physical force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court in *Johnson* deemed unconstitutionally vague. *See Johnson,* 135 S. Ct. at 2557. Indeed, at least three federal courts of appeals have applied *Johnson* to invalidate the residual clause of another statute, 18 U.S.C. § 16(b), a clause that is identical to that of § 924(c).[1] *See United States v. Gonzalez-Longoria,* 813 F.3d 225, 235 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719, 722 (7th Cir 2015); *Dimayo v. Lynch,* 803 F.3d 1110, 1117-20 (9th Cir. 2015). And relying on those circuits' reasoning, at least two district courts have held § 924(c)'s residual clause to be void for vagueness as well. *See United States v. Lattanaphom,* ___ F. Supp. 3d ___, 2016 WL 393545, *3-*4 (E.D. Cal. 2016); *United States v. Edmundson,* ___ F. Supp. 3d ___, 2015 WL 9582736, *3 (D. Md. 2015).

---

[1] Like § 924(c)(3), § 16 defines a "crime of violence" as:

(a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

3

These cases compel the same result in Mr. Holder's case. Because § 924(c)'s residual clause is void for vagueness, it cannot constitutionally define a "crime of violence" for purposes of a § 924(c) conviction.

Furthermore, bank robbery under 18 U.S.C. § 2113(a) and (e) does not categorically qualify as a "crime of violence" under the remaining force clause. This is because under § 2113(a) and (e), a person may accomplish bank robbery in which a death occurs either through "force and violence" *or* through "intimidation." 18 U.S.C. § 2113(a). Though a killing or hostage-taking must result either during or in the defendant's flight from the crime, *see* 18 U.S.C. § 2113(e), the statute does not require that they involve the defendant's use of force. Federal bank robbery in which a killing occurs, under § 2113(a) and (e), therefore does not require as an essential element the use, attempted use, or threatened use of violent physical force. Further, bank robbery under § 2113(a) and (e) may be accomplished without the *intentional* use, attempted use, or threatened use of violent physical force. Therefore, bank robbery under § 2113(a) and (e) categorically fails to qualify as a "crime of violence," and Mr. Holder's conviction under § 924(c) cannot stand.

Because § 924(c)'s residual clause is unconstitutional, Mr. Holder's § 924(c) conviction and the death sentence he received for that conviction (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction. Further, Mr. Holder is entitled to relief under 28 U.S.C. §

4

2255(h)(2) because *Johnson* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

Accordingly, Mr. Holder respectfully asks this Court to grant his § 2255 motion, vacate his § 924(c) conviction and his death sentence under § 924(j), and order that he be resentenced by a jury on all counts subject to death sentencing.

Below, Mr. Holder provides more detailed support for this motion.

## STATEMENT OF RELEVANT FACTS

### A.    **Conviction and Sentencing.**

Mr. Holder and a co-defendant, Billie Allen, were jointly charged in this Court with bank robbery in which a killing occurs, under 18 U.S.C. § 2113(a) and (e) (Count 1), and using or carrying a firearm during and in relation to a crime of violence, specifically bank robbery as charged in Count 1, in violation of 18 U.S.C. § 924(c) (Count 2).[2] The government sought the death penalty against both men under 18 U.S.C. § 2113(e) for Count 1 and under 18 U.S.C. § 924(j) for Count 2. This Court granted Mr. Allen's severance motion and ordered the two men tried separately.

Allen was tried first, and he was convicted on both counts. Although the evidence showed that Allen alone shot and killed the victim, Allen's jury

---

[2] The criminal case against Mr. Holder and Mr. Allen is No. 97-cr-00141-ERW. The indictment is docket no. 17 in that case.

sentenced him to death only on the § 924(c) count and returned a life sentence on the bank robbery charge.

Mr. Holder, too, was subsequently convicted both of the bank robbery and of the § 924(c) offense. But his jury returned death sentences on both counts.

### B.    Direct Appeal.

Mr. Holder timely appealed to the Eighth Circuit, raising various issues relating to jury selection, jury instructions, admission of evidence, and aggravating factors. The court of appeals rejected all of his arguments and affirmed his convictions and death sentences. *United States v. Allen,* 247 F.3d 741 (8th Cir. 2001). The United States Supreme Court denied certiorari. *Holder v. United States,* 539 U.S. 916 (2003).

### C.    Previous § 2255 Motion.

Following the denial of certiorari, Mr. Holder timely filed a motion for collateral relief under 28 U.S.C. § 2255.[3] He asserted in the motion (1) that the indictment failed to allege a statutory aggravating factor, in violation of the Fifth Amendment, (2) that the jury improperly considered a statutory aggravating factor, and (3) that trial counsel was ineffective in numerous respects. This Court denied relief. *Holder v. United States,* 2008 WL 2909648 (E.D. Mo. Jul. 22, 2008). This Court also denied Mr. Holder's subsequent motion to amend the

---

[3] Mr. Holder's initial § 2255 motion was docketed under case number 03-cv-00923-ERW.

judgment pursuant to Fed. R. Civ. P. 59(e). *Holder v. United States,* 2009 WL 5030785 (E.D. Mo. Dec. 14, 2009).

The Eighth Circuit affirmed the denial of relief. *Holder v. United States,* 721 F.3d 979 (8th Cir. 2013). The United States Supreme Court denied certiorari. *Holder v. United States,* 136 S. Ct. 34 (2015).

**D.    *Johnson v. United States.***

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. With *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011), and *James v. United States,* 550 U.S. 192 (2007), finding ACCA's residual clause too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment.

Specifically, *Johnson* held that  "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson,* 135 S. Ct. at 2557.

**E.    *Welch v. United States.***

After *Johnson* was decided, federal prisoners throughout the country sought to challenge ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c). This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral

review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.

On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule  substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Mr. Holder's § 924(c) conviction cannot be sustained. Given this circumstance, Mr. Holder is filing in the Eighth Circuit, contemporaneously with the filing of the instant motion, an application for authorization to file a successive § 2255 motion. He is also filing a motion asking this Court to hold the instant successive § 2255 motion in abeyance pending the Eighth Circuit's ruling on his motion for authorization to file it.

### ARGUMENT

**I.     In light of *Johnson,* Mr. Holder's § 924(c) conviction cannot be sustained because federal bank robbery under § 2113(a) and (e) does not qualify as a "crime of violence."**

Mr. Holder's conviction for using or carrying a firearm during and in relation to a "crime of violence" is void because the "crime of violence" element cannot be satisfied here. After *Johnson,* the predicate offense of bank robbery resulting in death cannot, as a matter of law, qualify as a "crime of violence" for purposes of § 924(c). As explained below, federal bank robbery under 18 U.S.C. § 2113(a) and (e) categorically fails to qualify as a predicate "crime of violence" under § 924(c) because it does not meet the definition of the force clause and because the unconstitutional residual clause cannot define a valid federal crime.

8

**A.    Section 924(c)'s residual clause is materially identical to ACCA's residual clause and therefore like ACCA's clause is unconstitutionally void for vagueness.**

Section 924(c) defines "crime of violence" in  two ways:

>    (3)    For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
>
> (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The first clause, § 924(c)(3)(A), is known as the force or elements clause.

The second, § 924(c)(3)(B), is the residual clause.

The ACCA, 18 U.S.C. § 924(e), provides for an enhanced penalty for those convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony."  ACCA's definition of  "violent felony" includes the residual clause struck down in *Johnson,* a clause that is materially indistinguishable from that in § 924(c)'s residual clause. The ACCA provides:

>    Any crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i)    Has as an element the use, attempted use, or threatened use against the person of another, or
>
> *(ii)*    Is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added).

9

Section 924(c)'s  residual clause suffers from the same flaws that rendered ACCA's residual clause unconstitutionally vague under the required categorical approach. As with ACCA's residual clause, § 924(c)'s clause "require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch v. United States,* 136 S. Ct. at 1262. "The 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

The constitutional guarantee of due process, the *Johnson* Court found, cannot tolerate "condemn[ing] someone to prison for 15 years to life," the punishment prescribed under ACCA, based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560. Likewise, due process cannot tolerate condemning a person to death based upon § 924(c)'s equally shapeless residual clause.

Moreover, courts have already invalidated a residual clause identical to that in § 924(c). The residual clause of 18 U.S.C § 16(b) is the mirror image of that of § 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following *Johnson. See United States v. Gonzalez-Longoria,* 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimayo v. Lynch,* 803 F.3d 1110 (9th Cir. 2015). Still further, at least two district courts have considered § 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson. See United States v. Lattanaphom,* ___ F. Supp. 3d ___, 2016

WL 393545 (E.D. Cal. 2016); *United States v. Edmundson,* ___ F. Supp. 3d ___,

2015 WL 9311983 (D. Md. 2015). This Court should do the same.

> **1. *Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

The Supreme Court began its analysis in *Johnson* by noting that the so-

called categorical approach mandates the use of a two-step framework to

determine whether a crime is a violent felony within the meaning of ACCA.

*Johnson,* 135 S. Ct. at 2557, 2562. As the Seventh Circuit described it: "In the first

step, the court must determine 'the kind of conduct that the crime involves in the

ordinary case' as opposed to the facts on the ground in the defendant's . . . case."

*Vivas-Ceja,* 808 F.3d at 721 (quoting *Johnson,* 135 S. Ct. at 2557). The second

step also depends on the ordinary case. Specifically, the "court must gauge

whether that ordinary case of the crime presents a serious potential risk of

physical injury." *Id.*

But this required approach to ACCA's residual clause "conspire[d] to make

it unconstitutionally vague." *Johnson,* 135 S. Ct. at 2557. The first step is

problematic, the *Johnson* Court explained, because too much uncertainty exists

about what constitutes the "ordinary case" of a crime. *Id.* "[T]he residual clause

offers no reliable way to choose between [] competing accounts of what 'ordinary'

. . . involves." *Id.* at 2558. In fact, the Court explained further, statistical analysis

of reported cases, Google, and gut instinct are all equally unreliable in identifying

the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing *en banc*)).

The  second step, too, is fatally flawed because even if the "ordinary case" could indeed be determined, there would still be too much "uncertainty about how much risk it takes" before such "ordinary case" should be deemed sufficiently serious to be categorized as a violent felony. *Vivas-Ceja,* 808 F.3d at 722 (citing *Johnson,* 135 S. Ct. at 2558).

Significantly, the Court's critique of the second step did not turn on the type of risk specified in ACCA's invalidated residual clause, namely, the "serious potential risk of *physical*  injury." Rather, as with  the first step, the Court's analysis  turned on the shapeless "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson,* 135 S. Ct. at 2558. Risk assessment, the Court made clear, is not inherently unconstitutional. *See id.* at 2561. But because risk assessment under ACCA's residual clause is based not on the facts of the actual case but on the amorphous "ordinary case," the clause is unconstitutionally vague. The  indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is simply more than the Due Process Clause can bear, held the Court. *Id.* at 2558.

*Johnson* thus upended not just  ACCA's residual clause, but  the "ordinary case" analysis compelled by such a statutory framework.  In other words, the only

way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

### 2. For the reasons identified in *Johnson,* § 924(c)(3)(B) also is unconstitutionally vague.

Notwithstanding that § 924(c)'s residual clause is not a mirror image of ACCA's, the two clauses are functionally the same. The difference in exact wording does not affect the constitutional analysis that shows both to be void for vagueness.

For one thing, courts regularly equate ACCA's "violent felony" definition with other statutes defining crimes of violence, including 18 U.S.C. § 16(b), which as noted above is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States,* 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (collecting cases); *Roberts v. Holder,* 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis).

Further, although the risk at issue in ACCA is risk of injury while the risk at issue in § 924(c) is that physical force will be used, both statutes require that risk be assessed via the "ordinary case" method. It is this analytical framework that infects both statutes with a due process problem.

Under § 924(c), just as under ACCA, courts must follow the same two-step process. First, the court must envision the "ordinary case" embodied by a felony. Second, the court must assess the quantum of risk posed by such "ordinary

13

case." As the Fourth Circuit explained in the context of reviewing the (identical to § 924) § 16(b):

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James,* 550 U.S. at 208. As long as an offense is of a type that, *by its nature,* presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*United States v. Avila,* 770 F.3d 1100, 1107 (4th Cir. 2014) (emphasis added). At least three  circuits have held that because the shapeless "ordinary case" approach applies to cases under § 16(b), that statute's residual clause  is void after *Johnson. See Gonzalez-Longoria,* 813 F.3d at 235; *Vivas-Ceja,* 808 F.3d at 722; *Dimayo,* 803 F.3d at 1116-17.

It  follows that the same analysis applies to the identical residual clause of § 924(c). *See, e.g., United States v. Fuerte,* 805 F.3d 485, 498 (4th Cir. 2015) (applying the "ordinary case" inquiry to the § 924(c) residual clause). Section 924(c)'s residual clause, just like that of  § 16(b) and  ACCA, suffers from the "double indeterminacy" the *Johnson* Court held  the Due Process Clause cannot tolerate. *See Edmundson,* 2015 WL 9311983, at *4.

Indeed, in the course of litigating  *Johnson,* the United States conceded that the residual clauses contained in  ACCA and § 16(b) (and necessarily in the identical § 924(c)) pose the same problem:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's

14

central objection to the residual clause. Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States,* No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964) (Mar. 30, 2015).

The United States was correct in its analysis, and this Court  should hold it here  to  the same concession.

In sum, § 924(c), like ACCA, requires courts to apply "ordinary case" analysis to assess the risk involved in a  predicate offense. Because this analysis involves the same flawed steps that brought down the ACCA residual clause, § 924(c)(3)(B) also cannot survive constitutional scrutiny. Under the due process principles articulated in *Johnson*, § 924(c)'s residual clause cannot be used to support a conviction under that statute. Mr. Holder's conviction under § 924(c) – and the death sentence he received for it – must be overturned because the conviction turns on a determination that the predicate bank robbery with which he was charged in Count 1 is a  "crime of violence." And federal bank robbery, the section that follows will demonstrate, qualifies as a crime of violence only under the unconstitutional residual clause; it cannot satisfy the remaining force or elements clause.

15

**B.    Federal bank robbery fails to qualify categorically as a "crime of violence" under the force clause of section 924(c) because it may be committed merely through "intimidation."**

**1.    The categorical approach applies to determining whether an offense qualifies as a "crime of violence" under the force clause.**

In determining whether an offense qualifies as a "crime of violence" under the force clause of § 924(c), courts must employ the categorical approach. *See Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]." *Id.* In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition. *See, e.g., United States v. Torres-Villalobos,* 487 F.3d 607, 616 (8th Cir. 2007); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most innocuous conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Given this, an offense will qualify as a "crime of violence" under the force clause of § 924(c) only if it has, as an element, the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two requirements. First, "physical

16

force" must involve *violent* force – that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010).  Second, the use of such force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

It is not enough that the statute includes some requirement of specific intent, such as the intent to deprive a person of property, or even the intent to cause injury. To qualify as a crime of violence under the "force" or "elements" clause, the statute must have as a required element the intent to use strong physical force.

Applying these standards to Mr. Holder's case requires vacatur of both his conviction under  § 924(c) and the death sentence he received for that conviction under § 924(j).  As detailed below, the predicate offense for which Mr. Holder was convicted,  bank robbery resulting in death, under 18 U.S.C. § 2113(a) and (e), categorically fails to qualify as a crime of violence under § 924(c)'s force clause because it may be committed by intimidation as well as by the use of force, and because the required death or hostage-taking need not result from the defendant's use of force.

### 2. "Intimidation" under the federal bank robbery statute does not require the use or threatened use of violent physical force.

Section 2113(a) defines bank robbery to apply to anyone who

> by force and violence *or by intimidation,* takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association.

18 U.S.C. § 2113(a) (emphasis added). Because § 2113(a) may be violated "by intimidation" alone, it cannot satisfy § 924(c)'s force clause. "Intimidation" does not require the use, attempted use, or threatened use of "violent force."

"Intimidation" under the federal bank robbery statute occurs when "an ordinary person in the [victim's position] could reasonably infer a threat of *bodily harm* from the bank robber's words and actions." *United States v. Picker,* 616 F.3d 821, 825 (8th Cir. 2010); *see also United States v. Yockel,* 320 F.3d 818, 824 (8th Cir. 2003). But even assuming that the act of placing another in fear of bodily harm constitutes a threat of physical injury, federal bank robbery still fails to qualify as a "crime of violence" under § 924(c)'s force clause because it does not require the use or threatened use of "violent force" against another.[4]

The Fourth Circuit's decision in *Torres-Miguel* is directly on point. In that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not *necessarily* require the use or

---

[4] The government's recent concession with respect to Maryland common-law robbery is instructive here. *See* Br. of Appellee at 73, *United States v. Louis Martin,* Case No. 14-4779 (4th Cir. Sept. 15, 2015). The Maryland provision at issue in *Martin* defines robbery in the same manner as does § 2113(a), providing for alternative elements of force or intimidation. If Maryland robbery does not qualify as a "crime of violence" under § 924(c)'s force clause, then neither does federal bank robbery under § 2113(a).

threatened use of physical force, let alone "violent force." 701 F.3d at 168.

The issue in *Torres-Miguel* was whether the defendant's prior conviction for the California crime of wilfully threatening to commit a crime which "will result in death or great bodily injury to another" qualified as a violent felony under a force clause materially indistinguishable from that in § 924(c). *Id.* (citing Cal. Penal Code § 422(a)). The court held, without qualification, that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the . . . definition of crime of violence." *Id.* "[A] crime may *result* in death or serious injury," the court explained, "without involving *use* of force." *Id.* (emphasis added).

Referencing  decisions from various federal courts of appeals, the *Torres-Miguel* court identified many possible ways in which physical injury – even death – may result without the use or threatened use of "violent force." *Id.* at 168-69 (collecting cases). "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Id.* (citing *United States v. Cruz-Rodriguez,* 625 F.3d 274, 276 (5th Cir. 2010)).

*Torres-Miguel* also relied on the Second Circuit's decision that a Connecticut conviction for third-degree assault could not qualify as a "crime of violence" under the force clause. *Chrzanoski v. Ashcroft,* 327 F.3d 188, 194 (2d Cir. 2003). The Connecticut statute "required the state to prove that the defendant had intentionally caused physical injury." *Id.* at 193. Nevertheless,

19

because the statute required only *causation* of an injury, it failed to require the use or threatened use of physical force. *Id.* at 194. "An individual could be convicted of intentional assault in the third degree," said the Second Circuit, "for an injury caused not by physical force, but by guile, deception, or even deliberate omission." *Id.* at 195. The court conceived of "numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient," or someone who causes physical impairment by putting a tranquilizer in the victim's drink. *Id.*

The Tenth Circuit, too, provided support for the *Torres-Miguel* court's decision. *United States v. Perez-Vargas,* 414 F.3d 1282 (10th Cir. 2005),  involved a Colorado third-degree assault statute that required proof of an act causing bodily injury by means of a deadly weapon. But it did not, the Tenth Circuit found, necessarily include the use or threatened use of physical force, and therefore did not define a crime of violence under the force clause. *Id.* at 1287. As examples of Colorado third-degree assault that would not use or threaten the use of physical force, the Tenth Circuit identified intentionally placing a barrier in front of a car, causing an accident, or intentionally exposing someone to hazardous chemicals. *Id.* at 1286.

The reasoning of *Torres-Miguel* and the many cases on which it relied applies equally to federal bank robbery under § 2113(a). That crime can be accomplished by intimidation, which includes simply putting another in fear of bodily harm. The federal bank robbery statute therefore fails to require the use of

physical force, and certainly does not require the "violent force" that is a prerequisite to constitutional application of the force clause. *See United States v. Rice,* 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (citing *Johnson v. United States,* 559 U.S. at 139).

Indeed, a defendant could accomplish a bank robbery by placing someone in fear of bodily harm by, for example, threatening to poison a bank teller, threatening to release hazardous chemicals in the bank, or locking a bank employee in a vault without food or water. A bank robber also could intimidate someone by asking whether she loves her family, without ever threatening an act designed to cause physical harm. The cases cited above hold that these types of acts do not constitute "violent force."

Thus, because "the full range of conduct" covered by § 2113(a) does not require "violent force," it categorically cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *See Torres-Miguel,* 701 F.3d at 171. And it makes no difference that the possibility of violating the bank robbery statute without the use or threat of violent force may be slim. Because that possibility exists, this Court cannot, as a matter of law, find that federal bank robbery is a "crime of violence."

### 3. "Intimidation" under the federal bank robbery statute does not require an *intentional* use or threat of violent force.

Furthermore, "intimidation" as defined by the federal bank robbery statute cannot satisfy the force clause because it does not require an *intentional* use or

21

threatened use of violent force. *See Torres-Villalobos,* 487 F.3d at 616-17 (acknowledging that § 16(b)'s identical force clause requires that the offense involve the *intentional* use or threatened use of violent force); *see also Dixon,* 805 F.3d at 1198 (holding that California robbery statute did not qualify as a "violent felony" under the ACCA's force clause because it did not require the intentional use or threat of force).

It is well settled that the "intimidation" element of § 2113(a) is missing this necessary *intentional* mens rea. "Intimidation" under the federal bank robbery statute is satisfied "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrup,* 86 F.3d 359, 364 (4th Cir. 1996).

For example, in *United States v. Yockel,* the Eighth Circuit upheld the defendant's bank robbery conviction under § 2113(a) even though there was no evidence he intended to put the teller in fear of injury. *Yockel,* 320 F.3d at 821. The defendant never made any sort of physical movement towards the teller, nor did he display any sort of weapon. In fact, the evidence failed to establish that he claimed to have a weapon, or even gave any appearance of possessing a weapon. *Id.* The Eighth Circuit nevertheless found the "intimidation" element satisfied, making clear that the element requires neither the use or threat of violent force nor the intentional use or threat of force. *See id.; see also United States v. Kelley,* 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes

22

intimidation is viewed objectively, . . . and a defendant can be convicted under section 2113(a) even if he *did not intend* for an act to be intimidating.") (emphasis added) (citing *Yockel*).

A defendant thus may be found guilty of federal bank robbery without any evidence that  he intended to put another in fear of injury. All the government must prove is that the victim reasonably feared injury from the defendant's actions, whether or not the defendant intended to create that fear.

### 4. The element in § 2113(e) that a killing or hostage-taking occur does not require the intentional use of strong physical force.

Mr. Holder was charged in Count 1 not just with bank robbery under 18 U.S.C. § 2113(a), but with bank robbery in which a killing occurs, under § 2113(e). Section 2113(e) provides:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. § 2113(e). But while § 2113(e) requires proof of a death or a hostage-taking, it does not add to the charged crime an essential element of the use, attempted use, or threatened use of violent physical force, and thus does not satisfy § 924(c)'s force clause.

Quite to the contrary, just as a bank robber could intimidate someone without intentionally threatening violent force against them, so he could

23

unintentionally, and without using or threatening force, cause someone's death in committing or fleeing the bank robbery. For example, in the course of pursuing the fleeing robbery, a law enforcement officer might get into a car accident and die. Similarly, a defendant might intimidate a hostage into accompanying him by threatening to lock her in the vault if she doesn't do so, causing her to suffer a heart attack and die.

The Eighth Circuit itself has held as much, in its direct-appeal decision in this very case: "[b]ecause the plain language of 18 U.S.C. § 2113(e) says simply 'kills,' and not 'intentionally kills' or 'murders,' the settled principles of construction direct us to conclude that Congress did not intend to add an additional scienter requirement to the killing component of the crime." *Allen,* 247 F.3d at 782 (internal brackets and quotation omitted). Because the full range of conduct encompassed by § 2113(e) does not require the intentional use of violent physical force, the statute as a whole cannot define a crime of violence under § 924(c)'s force clause. *See, e.g., Torres-Miguel,* 701 F.3d at 168.

## II. Mr. Holder is entitled to relief under 28 U.S.C. § 2255 because his claim under *Johnson* is cognizable, timely, and satisfies the successive petition requirements of § 2255(h)(2).

### A. Mr. Holder's claim is cognizable under § 2255(a).

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Holder's conviction violates the Due Process Clause of the Fifth Amendment, violates federal law, and exceeds

24

this Court's jurisdiction. This Court therefore should grant him relief under §
2255(a).

First, for all the reasons explained above, Mr. Holder's conviction on Count
2, the § 924(c) charge, violates due process because it depended on the
unconstitutionally vague residual clause.

Second, as also explained above, bank robbery in which a death results
under 18 U.S.C. § 2113(a) and (e) categorically cannot satisfy § 924(c)'s force
clause. Mr. Holder's indictment therefore failed to state an offense under §
924(c), and Mr. Holder now stands convicted of an offense that is no longer
criminal. Given this, his conviction violates the laws of the United States and
results in a fundamental miscarriage of justice. This is precisely the type of error
that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-
47 (1974) (holding that when an intervening decision establishes that a prisoner
was convicted of "an act that the law [no longer] make[s] criminal," "such a
circumstance 'inherently results in a complete miscarriage of justice and presents
exceptional circumstances' that justify relief under § 2255").

Third, Mr. Holder's conviction exceeds this Court's jurisdiction because not
only did the indictment fail to state a § 924(c) offense,  it affirmatively alleged
conduct that is outside that statute's reach. That is, Count 2 of the indictment
alleged that Mr. Holder used or carried a firearm during or in relation to bank
robbery under 18 U.S.C. § 2113(a) and (e), an offense that,  as discussed above,
categorically cannot qualify as a "crime of violence" for purposes of § 924(c). In

turn, a § 924(c) conviction can never be sustained based on the underlying offense of bank robbery pursuant to § 2113(a) and (e), no matter what the facts are.

Simply put, Count 2 altogether fails to state a § 924(c) offense. Mr. Holder's conviction on Count 2 therefore is a legal nullity that was entered in excess of this Court's jurisdiction, and it must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute"); *United States v. Barboa,* 777 F.3d 1420, 1423 n.3 (10th Cir. 1985).

**B.    Mr. Holder's motion for relief is timely.**

Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.,* § 2255(f)(3).

The Supreme Court decided *Johnson* on June 26, 2015. Mr. Holder has filed this application within one year of that date. Further, on April 18, 2016, the Supreme Court expressly made *Johnson*'s new rule retroactively applicable to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016). This motion therefore is timely filed.

**C.    Mr. Holder's successive § 2255 motion satisfies the requirements of 28 U.S.C. § 2255(h)(2) because *Johnson* announced a new, previously unavailable rule of constitutional law, and the Supreme Court has made *Johnson* retroactive to cases on collateral review.**

Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. See 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.; see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Holder files this successive § 2255 motion after requesting authorization to do so from the Eighth Circuit under § 2255(h)(2). Together with this § 2255 motion, Mr. Holder has filed a motion asking this Court to hold it in abeyance pending the Eighth Circuit's decision on his application for certification under § 2255(h)(2). Because Mr. Holder has made a *prima facie* showing that he has satisfied § 2255(h)(2), the Eighth Circuit's certification should be forthcoming. *See Woods v. United States,* 805 F.3d 1152, 1154 (8th Cir. 2015) (authorizing filing of a successive § 2255 motion to assert a *Johnson* claim).

Mr. Holder can do more than make out a *prima facie* showing, however. He can demonstrate conclusively that his motion meets all the requirements of § 2255(h)(2).

To do so, he need only point to the Supreme Court's recent decision in *Welch. Welch v. United States,* 136 S. Ct. 1257 (2016). There, the Supreme Court itself held that *Johnson* announced a new constitutional rule, that this rule was previously unavailable, and that *Johnson*'s rule is substantive and therefore applies retroactively to cases on collateral review. *See id*. at 1265.

### III.   Mr. Holder's invalid § 924(c) conviction also invalidates his death sentence on Count 1, the bank robbery charge.

Mr. Holder was convicted of both bank robbery – Count 1 – and violating § 924(c) – Count 2. The jury returned a separate death sentence for each count. On Count 1, Mr. Holder was sentenced to death under 18 U.S.C. § 2113(e), and on Count 2, he was sentenced under 18 U.S.C. § 924(j).

After *Johnson,* Mr. Holder's death sentence on Count 2 must fall along with his conviction for the non-existent crime. But that is not all. The invalidation of Mr. Holder's § 924(c) conviction requires that he be resentenced on Count 1 as well.

When a defendant has been convicted and sentenced on multiple charged offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986). The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the

time of the sentencing that . . . conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per curiam) (*quoted in United States v. Starr,* 503 F. App'x 517, 518 (8th Cir. 2015) (per curiam)).

This principle applies with equal force in the case of jury sentencing. The record in Mr. Holder's case shows at least a reasonable likelihood that the inclusion of the unconstitutional § 924(c) count influenced the jury's decision to sentence him to death. Mr. Holder's jury was allowed to consider not just that he participated in a bank robbery in which a death resulted, but that this bank robbery was a "crime of violence." The jury was told that this "crime of violence" was so egregious that using a gun in connection with it amounted to a second federal felony that qualified for a second potential death sentence. And yet, that so-called "crime of violence" was not a crime at all, and should never have been presented to the jury at all, during either stage of Mr. Holder's trial.

Even worse, under the sentencing provision attached to § 924(c), 18 U.S.C. § 924(j), the jury was directed to consider whether Mr. Holder committed "murder," and acted "with malice aforethought." That state of mind is widely understood by the general public to involve evil, depravity, and wanton disregard for the value of human life.[5]

---

[5] Merriam-Webster's online dictionary provides the following "legal definition of malice:

> a: the intention or desire to cause harm . . . to another through an unlawful or wrongful act without justification or excuse;

The prejudicial impact on the jury of the § 924(c) charge is plainly demonstrated by the result of co-defendant Billie Allen's penalty phase. Though the evidence at his trial, as at Mr. Holder's, proved he alone shot and killed the victim in this case, he received a death sentence only on the § 924(c) count, and a life sentence on the bank robbery count. Whatever the differences between aggravation and mitigation might have been at the two trials, Allen's jury concluded that using a firearm in connection with a "crime of violence," resulting in "murder" was a more severe crime than the bank robbery alone, and thus worthy of the ultimate punishment. Given that the trial evidence proved Mr. Holder did not himself kill the security guard, there is at least a reasonable probability that the jury's sentencing verdict would have been different, had it been tasked only with determining Mr. Holder's sentence for a bank robbery in which a killing occurred.

Given the likelihood that an invalid conviction influenced the jury's sentencing verdict on the remaining, valid count, this Court must order that Mr. Holder be resentenced by a jury. As the Supreme Court recently made clear in *Hurst v. Florida,* 136 S. Ct. 616 (2016), the Sixth Amendment requires that a jury,

---

b: wanton disregard for the rights of others or for the value of human life;
c: an improper or evil motive or purpose . . . ;
d: actual malice.

http://www.merriam-webster.com/dictionary/malice#legalDictioary, last visited on April 22, 2016.

and not the court, determine whether a defendant should be sentenced to death. *Hurst,* 136 S. Ct. at 624. The Court was unequivocal: "The Sixth Amendment protects a defendant's right to an impartial jury. This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's factfinding." *Id.*

After *Hurst,* any death sentence rendered by a court is unconstitutional. An appellate or post-conviction court that finds non-structural error in the defendant's death sentence therefore must remand for a new penalty phase before a jury. It may not engage in post hoc reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence. To the extent any prior Supreme Court decisions, such as *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overrules them.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Holder's death sentence on Count 1 to stand despite the jury's exposure to the invalid count and its  prejudicial elements would implicate the Eighth Amendment. The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 576 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. As the  Court explained,  "[t]he fundamental respect for humanity

31

underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (citations and internal quotations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death sentence imposed on petitioner." *Id.* at 585. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.*

And while the prosecutor had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without express argument, there would be a possibility that the jury's belief the petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) conviction had a profoundly prejudicial impact on Mr. Holder's case as a whole, and undermines confidence in his death sentence on Count 1.

Mr. Holder likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Holder, it was presented with an indictment alleging not one,

32

but two capital offenses, including a § 924(c) count. The Department's capital-case review process was skewed by the presence of the unconstitutional charge just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

Finally, equitable considerations warrant resentencing as well. As noted above, the evidence at both Mr. Holder's trial and that of Billie Allen overwhelmingly proved that Allen alone shot and killed bank security guard Richard Heflin. Yet Billie Allen received a life sentence for his conviction on Count 1, the bank robbery count, and was sentenced to death only on Count 2, the § 924(c) count.

Thus, if this Court were to vacate only the death sentence associated with Mr. Holder's illegal § 924(c) conviction, he would remain sentenced to death on a charge for which his co-defendant, the undisputed killer in the case, was sentenced to life imprisonment. Should Billie Allen, too, receive relief for his own invalid § 924(c) conviction, he will be entitled to leave federal death row. Mr. Holder, however, would not.[6] This Court should vacate Mr. Holder's sentence in its entirety and order that he be resentenced before a jury on Count 1 alone.

---

[6] The Allen and Holder cases were the first federal death penalty prosecutions brought in the Eastern District of Missouri. Before the co-defendants' separate trials began, the government apparently decided that if Allen – who was tried first – received a life sentence, it would take the death penalty off the table in Mr. Holder's case.

33

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Holder respectfully asks this Court to vacate his conviction and sentence on Count 2, the invalid charge under 18 U.S.C. § 924(c). Mr. Holder further requests the following relief:

a)    That this Court vacate his sentence on Count 1 and remand this case for a new penalty phase trial on the bank robbery charge alone.

b)    That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

c)    That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that he be personally present at such conference.

d)      Any other relief that may be necessary to correct Mr. Holder's invalid

conviction and sentence.

Respectfully Submitted,


/s/Madeline S. Cohen
Madeline S. Cohen, Attorney at Law
Colorado Bar Number 27677
1942 Broadway, Suite 314
Boulder, Colorado 80302
(303) 402-6933
madeline@madelinecohenlaw.com

JENNIFFER HORAN
FEDERAL DEFENDER
Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Arkansas Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
scott_braden@fd.org

Counsel for Norris G. Holder, Jr.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 11th day of May, 2016, a copy of the foregoing Motion to Vacate Conviction Under 28 U.S.C. § 2255 was served via the CM/ECF electronic filing system upon: Cristian Smith, Assistant United States Attorney, cris.smith@usdoj.gov, Joseph Landolt, Assistant United States Attorney, joseph.landolt@usdoj.gov; and the Office of the United States Attorney for the Eastern District of Missouri, usamoe.crimdock@usdoj.gov.

/s/ Madeline S. Cohen
Madeline S. Cohen